Do you know how to pronounce your client's name? Pantoja-Medrano. Say it slowly for me, I'm trying to learn. You'll forgive me, I have a frog in my throat. Okay. Pantoja-Medrano. Thank you. Good morning. Excuse me. May it please the Court, my name is Parker Clote of Johnson & Associates. I'm here on behalf of the petitioner, Augustin Pantoja-Medrano. In addition to answering any questions that your honors might have, I'd just like to draw the Court's attention to a few points this morning which support the viability of the petitioner's proposed social group under both this Court's precedent and the Board's. Leading off, the first point we would make is that thus far the Fourth Circuit has refrained from actually weighing in substantively. I apologize. On the Board's criteria, the Board's interpretation of a particular social group as defined in the Immigration and Nationality Act, thus far it hasn't actually been necessary to do so for this Court. We would advocate and advance the argument that the Board's interpretation of a particular social group is unreasonable and urge this Court to take into account the persuasive authority of the Third and Seventh Circuits. Of course, we don't have to reach that question. Not necessarily, Your Honor, no. But as a baseline, I just wanted to make sure we had it. And again, as you beat me to it, but even if not, we certainly meet the criteria for a particular social group under this circuit and the Board's own precedent as well. And the fact that the membership in this case is imputed has no bearing on the viability of the proposed social group. And finally, to the extent that opposing counsel would seek to, well, there was a supplemental authority recently filed with the Court. We would maintain that it actually assists with our argument a bit more than the government's. Specifically, it embraces both elements of this Court's decision and Crestman-Valladerez, which, again, did not reach the ultimate question of whether or not the Board's interpretation is a legitimate exercise of agency discretion. But further, when the Eleventh Circuit drew its nice lines and actually separated the two criteria that are so often conflated, it did so in a way that, in its own way, refrained from ruling on the ultimate question itself. Therefore, we would advocate that even under this modified test, the petitioner's proposed social group certainly meets the criteria across the Board. There are several criteria that make up this determination of a particular social group, including particularity, immutability, social visibility. Are you saying that your client meets all three of those criteria? Yes, Your Honor. All right. Why don't you go through each one and tell us why? Well, in terms of the immutable characteristic element, which has thus far been this Circuit's official stance insofar as the Acosta opinion is concerned, which is where the other two requirements were first established, the petitioner claims persecution based on his membership in a group of people that are readily identified. Oh, I'm jumping ahead. I do apologize. How are they readily identified? Specifically, Your Honor, by the persecutors themselves. But they don't want to be identified. Correct. I mean, were there witnesses in drug cases or crimes? In this case, it was more of a supposed. I mean, we changed names and moved people around and knew all kinds of things to hide identities of folks that you'd have in this group. That is, I'm not quite sure, ironic, Your Honor. We tried to hide their identity. I can tell you with certainty that he wished he weren't part of the group because once their identity is known, for example, testifying before court in assistance with the prosecution even in their native countries. But he didn't testify in front of a court. He says he wasn't even an informant. No, that is correct, Your Honor. They accused him of being one. They accused him of being one principally for the fact that he… They said he was a snitch and he says he wasn't, right? Yes. The circumstances were not in his favor. He was staying at the house of the… But even if he was a snitch, how would you put him in a group that included others when you can't know who the others are because they don't want anybody to know who they are either? Correct. But by the board's own definition, it is a characteristic that he is unable to change and even if he could, well, I guess the second part doesn't quite apply if, you know, shouldn't be forced to because he would gladly give it up. The other two guys that were at the house with him that don't think too highly of him now, what would happen if they decided, well, maybe he didn't inform on us after all? Would they de-immutify his characteristic of being an informant then? Your Honor… I mean, it's not like, you know, siblings or other types of relationships that have been found to be immutable in the past. Correct. Nor is it a position of former military leadership, but it is certainly one with which, you know, not being privy to the internal policies of cartel organizations, I certainly don't want to speculate, but… Well, this really doesn't… I mean, this is one thing that struck me about this case. It may not be either here or there, but you had a couple of guys living in a house together and some of them went to jail and this fellow didn't. And they don't like it. And that happens a lot in criminal endeavors. But this almost has the appearance of being a personal dispute between these two, three or four individuals and it doesn't… I don't get the image that it's what you would see through the media of a connection to a vast cartel. It appears to be just a personal dispute among criminal defendants, which is pretty common. That is true, Your Honor. I would draw two points to distinguish it. The first is that it was not simply a matter of local police and a drug bust sort of situation. It was a sting from the FBI. Federal law enforcement usually sends a higher level of significance or imparts a higher level of significance, I suppose. And the two men who were sharing the house, the acquaintance of Mr. Pintojo Medrano, they were not only sent to jail convicted of drug crimes but then deported back to Mexico, all of which happened within a matter of hours, certainly under 56 hours of him coming to stay with them. And I suppose, would Your Honor's ultimate point be whether or not if it were rescindable, would that change the nature fundamentally? We certainly… I think I'm on the same page as you all, but in other words, how can you meet the particularity requirement? We don't have to go ration out new law if you haven't met the particularity requirement. No, Your Honor, but in the first place, this court has done a very good job of keeping the two discrete criteria. Okay, let's talk about particularity. But in this case, the particularity requirement is met simply by whether or not it is… If it eschews the categorization of an amorphous group that society, the society in question, would fail to recognize as a group… And I think that… I thought that Judge Agee's questions at least, perhaps not your answers, went to that point. Maybe it went to other points, but it went to that point too. Perhaps… It's hard to find that this is a particular group. This court has previously… Well, most recently in Zelaya v. Holder and in the Valladares decision. Well, in Zelaya, we said that there wasn't a particular… Yes. The proposed group was not particular. Okay, so how do you distinguish your case from that one? I would distinguish our case here in that the Zelaya case involved more of a police tipster situation. Whereas the Crespin-Valladares situation was a family group, which we also have in this case, threats were made against the petitioner's wife, death threats against him as well as his family. In the Crespin-Valladares situation, it tracks more closely with the current fact scenario simply because… So you're saying the family member is a closer connection to an informant than a tipster is to an informant? No, Your Honor. Because I'm trying to… I think we all are trying to understand how you… What are the parameters of this group? And I'm having a real difficult time figuring out what the boundaries are here. If thus far, the parameters of the informant group, at least under the existing board precedent without going into the split, has been drug informants who testify at trial and assist with prosecution and therefore… Which isn't this fellow here. No, Your Honor. But there is a level of particularity that is revealed by the discovery of their identity. Whether or not that identity is erroneous or the supposition is erroneous should not factor in. The fact remains that these two men who were convicted of very serious drug crimes and subsequently deported have convinced themselves that the petitioner is responsible for their current situation. I guess I'm still waiting for a way to distinguish this from Zelaya, which sounds to me like a stronger case for the defendant or the person that's challenging what was done by the government here. There, a young Honduran male… The asserted group was young Honduran males who refused to join MS-13, have notified the authorities of MS-13's harassment tactics, and have an identifiable tormentor within MS-13. And we said that didn't qualify as a social group. Yes, Your Honor. It seems to me that they're more readily apparent as a social group than the social group that you're espousing here, which I don't really understand what the group is. Respectfully, Your Honor, the social group that we're espousing is distinguishable in the sense that an amorphous group of young men who might be subject to gang recruitment efforts is not tantamount to specific threats being made against specific people based on quantifiable actions, based on police action. The involvement with the police, whether factually accurate or not, suffices to cut the particularity at a certain place. A line of demarcation, I suppose. I'm sorry, I'm just having a really hard time understanding your argument. The involvement of the police, the fact that there is… These specific people were identified, or in this case, one person was identified as the sole cause of the issues that… They sought him out specifically rather than a group of his similarly situated peers who would be perhaps amenable to some kind of recruitment effort. And lastly, Your Honor, Your Honors, I apologize. We would, in the event that this Court does not decide to reach the ultimate question and examines the Respondent's proposed social group on the basis of the existing Board precedent, we would submit that the Board did certainly abuse its discretion in reversing the decision of the immigration judge in finding that the proposed social group was not a protected ground. The first few reasons being the Board actually failed to even mention its own precedent in the decision. There was no mention of particularity nor social visibility in the Board's opinion on appeal. Further, the Board asserted that the immigration judge actually failed to distinguish the social group from the one rejected by the Board in matter of CA, which is 23 INN Decisions 951. In that case, the Board was actually refusing to acknowledge former non-criminal drug informants who were working in California or the California cartel. In this case, the Respondent was in the country legally. He had nothing to do with law enforcement and he was erroneously, he was mistakenly thought to have been precisely the type of, a member of precisely the kind of group that the Board rejected in matter of CA. It's simply the Department of Homeland Security and on appeal oil that asserts the argument that the Petitioner's social group is not sufficiently socially visible nor particularized. And finally, you know, I guess this harkens back to the original point, but the Petitioner does once again submit that his imputed membership in this proposed social group does not make a difference with the ultimate question. Specifically, if the Court finds that the BIA's interpretation is reasonable, it still meets the precedent established by this Court. And further, testifying against, I'm sorry, excuse me, the Board has held that testifying against certain criminal elements has a social visible component, but they didn't hold that testifying is the only means of revelation. It's once the identities are revealed that it becomes a particularized group. And I see my time has run. Thank you very much. Thank you. Thank you, Your Honor. May it please the Court. Holly Smith on behalf of the Attorney General. Keeping in mind that the particular social group basis for asylum was not intended to be a catch-all for everyone seeking that particular relief, the Court should deny the petition for review because the record does not compel the sole conclusion that Petitioner's claimed group possesses the required particularity to establish a cognizable group under the asylum law. Pursuant to Lozama... Just stop there and not go into anything else. Right. Not deal with these other questions. Correct, Your Honor. The Court could stop there under, most particularly, its decision in Lozama. I'm sorry. Under its decision in Lozama. In any event... Lozama? Is that the layup that I would call Lozaya? There are two different decisions. I'm citing Lozama because that's what the Board cited in its decision. In Zalaya, the Court also decided that it could stop at the particularity requirement or, more specifically, the lack of particularity of the group in that case. So under this Court's precedent, it can stop at the lack of particularity of the social group claimed and not go any farther and deny the petition for review. If the Court does decide to go farther, it's the government's position that petitioner's arguments regarding Getimi are meritless and, in any event, his claimed group does not possess the required social visibility as there's no evidence in the record that his claimed group is perceived by the Mexican society as a group. If the Court doesn't have any questions, we've presented everything in brief. Thank you very much. I don't think we do have any questions. Counsel, do you wish to have a rebuttal? I tried to ask you this the first time around, and maybe you answered it, but I didn't understand it. You would agree that you haven't met the particularity requirement. It has not been met. You lose, right? Your Honor, well... Potentially, well, it would be up to the Court ultimately, but certainly... You don't have to go into the other issues. No, but the option is on the table to side with the Third and Seventh Circuits, certainly, with their view that the existence of those two specific criteria... What two specific criteria? The social visibility criterion and also the particularity requirement. Well, if I'm telling you that the particularity requirement's not met, you lose, right? We don't have to go into any other issues. If that's not right, tell me why it's not right. Just, Your Honor, respectfully, simply because this Court is not bound by Board precedent, those three criteria came... No, no, no, I understand that, but you're saying that you don't have to meet the particularity requirement. We should conclude that you haven't met it. Should you conclude... And you say, well, we don't have to meet it? Is that your response? Ultimately, yes, Your Honor. Ultimately, that's your contention, or ultimately you do have to meet it? No, it's just... There's just not... The petitioner would assert that there's not a hard out, necessarily. There's not a no-lose scenario, simply because, you know, up until, well, frankly, right now, this Court has usually stopped at the immutable characteristic analysis. It hasn't had the opportunity to... No, we talked about the particularity requirement and found it hasn't been met. If we should find it hasn't been met here, is there some... I don't understand. I'm just asking you. Maybe we will find it has been met, but if we find it hasn't been met, is that all she wrote for you? Do you have some argument that there is no particularity requirement or something? Yes, I guess that's what I was alluding to. Perhaps I was not clear. So you say there is no particularity requirement? As things stand at the moment, there certainly is. Whether or not it's conflated with the social visibility requirement as well or a discrete element is... Well, and we have had prior precedence where we have found that a particularity requirement all by itself has not been met. So we'd have to, in order to find that there is no freestanding particularity requirement, this panel would have to reject the view on that question of other panels. Is that correct? Yes, Your Honor. We can't do that. It would have to go on bank, right? I'm sorry? It would have to go on bank. We can't do that. Yes, Your Honor. So isn't it true that if you lose on the particularity requirement, you lose? Under these circumstances, yes. Okay. Now, I'm sorry. Go ahead. Just simply in response to opposing counsel, you know, obviously thus far we've been discussing the particularity requirement. Not only was that actual element absent from the board decision, but the government has the case that counsel mentioned, Lizama v. Holder, which is that the correct one? Lizama? Okay. Just deep pronunciations. This court did acknowledge that a majority of the circuits have deferred to the interpretation of the board, but that also does not categorically preclude a finding that the board has acted unreasonably. It circles back around to, I guess, our original argument. But the petitioner would certainly advocate that he meets both the social visibility requirement and the particularity requirement first established under matter for COSTA, and certainly as the precedent stands under this circuit at the moment. And even if the board is found not to have exercised an impermissible use of agency discretion, the respondent still respectfully requests that his petition for review be granted. Thank you.
judges: Diana Gribbon Motz, Robert B. King, G. Steven Agee